BROADWAY *v.* SIDWAY.

Opinion delivered December 9, 1907.

1. ATTORNEY—PRESUMPTION AS TO APPEARANCE BY.—Where an attorney appears for one of the parties in a court of record, the presumption is that the appearance is authorized, and this presumption can be removed only by proof. (Page 532.)

2. JUDGMENT—RELIEF AGAINST.—Equity will not interfere to relieve against a judgment obtained without service where the judgment debtor has no meritorious defense to the action in which such judgment was obtained. (Page 532.)

3. AFTER-ACQUIRED TITLE—MORTGAGE.—Under Kirby's Digest, § 734, providing that "if any person shall convey any real estate by deed purporting to convey the same in fee simple absolute or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate afterwards acquired shall immediately pass to the grantee," etc., a title acquired by a mortgagor after execution of the mortgage inures to "the mortgagee's benefit. (Page 532.)

Appeal from Craighead Chancery Court; *Edward D. Robertson*, Chancellor; affirmed.

*Hawthorne & Hawthorne*, for appellants.

In collateral attacks upon judgments, etc., ordinarily evidence *aliunde* can not be introduced to overthrow them; but where there is fraud or mistake, it is admissible, as under § 4424, Kirby's Digest, the decree is absolutely void. 77 Ark. 383; 77 *Id.* 504; 49 *Id.* 411; 33 *Id.* 778; 50 *Id.* 459; 71 *Id.* 565. There was no notice and no service. 63 Ark. 323; 79 *Id.* 289.

The decree was regularly rendered, and no good defense was made or is now tendered. 47 Ark. 293; 55 Id. 348; 98 U. S. 56; 2 Warvelle on Vendors, § 904. It is a collateral attack. 23 Cyc. 1064; 9 Ark. 176; 54 Pac. 1027; 43 Ark. 238; 49 Pac. 320; 71 *Id.* 672; 80 Fed. 991; 137 *Id.* 198. The recitals are conclusive, and can not be overturned. 49 Ark. 397; 72 *Id.* 101; 57 *Id.* 49; 66 *Id.* 1; 61 *Id.* 474.

BATTLE, J. On the 12th day of March, 1897, the following decree was rendered by the Craighead Circuit Court, in chancery sitting:

"On this day, this cause coming on to be heard, comes the plaintiff, Leverett B. Sidway, by his attorney, E. F. Brown, and the defendants, W. P. Tyler, Mary E. Tyler, L. B. Tyler, and A. C. Broadway, by their attorneys, Lamb & Lamb, and the cause being submitted upon the complaint, exhibits and record proof introduced at the bar of the court, the court finds that the defendants, W. P. Tyler, Mary E. Tyler, and L. B. Tyler, on the 20th day of December, 1894, executed and delivered to plaintiff their promissory notes [here several notes are described],

and that there is now due plaintiff on said notes the sum of five hundred and five dollars and fifty-one cents ($505.51), for which amount judgment is rendered in favor of the plaintiff against the defendants.

"The court further finds that on said 20th day of December, 1894, said defendants, W. P. Tyler, Mary E. Tyler and E. B. Tyler, to secure the payment of the said notes executed and delivered to the plaintiff their mortgage or deed of trust, whereby they conveyed to the plaintiff the following described real estate, situated in said district and county, towit: N. E. ¼ section 6, T. 15 N., R. 3 E. P. M., containing one hundred and sixty acres, more or less, and that it was provided in said mortgage that, if default be made in the payment of the principal or interest notes, the whole should become due by the election of the plaintiff.

"The court further finds that said land was sold on the 12th day of June, 1893, for the nonpayment of taxes for the year 1892, and purchased by R. H. McKay, who thereafter obtained a tax deed from the clerk of said county dated June 20, 1895; that R. H. McKay conveyed said land to defendant, A. C. Broadway.

"It is, therefore, ordered, considered and decreed by the court that the tax deed executed and delivered to said R. H. McKay by the clerk of said county [be], and the same is hereby, cancelled, set aside and removed; that the plaintiff, Leverett B. Sidway, have and recover of and from the defendants, W. P. Tyler, Mary E. Tyler and L. B. Tyler the sum of five hundred and five dollars and fifty-one cents ($505.51), together with all costs in this suit expended, which recovery for costs is also against the defendant, A. C. Broadway; and, in default of the payment of the same within thirty days, that the clerk of this court as master in chancery proceed to sell said real estate as provided by law for the satisfaction of said mortgage. The court further finds that A. C. Broadway, one of the defendants herein, by agreement of the plaintiff, is entitled to the occupancy and rent of the land for the year 1897 up to December 1st, and that, unless he deliver possession to the plaintiff on the first day of December, 1897, a writ of possession issue directed to the sheriff of said county, commanding him to deliver possession of the premises to the plaintiff."

On the 18th day of July, 1905, Leverett B. Sidway, trustee, sought to revive by *scire facias* the foregoing decree against Longus P. Tyler, Mary E. Tyler (who succeeded to the interest of her husband, W. P. Tyler in the lands mentioned in the decree, he having died and such interest being held by them as an estate in entirety) and against A. C. Broadway, and the occupants of the land.

Longus P. Tyler and Mary E. Tyler and A. C. Broadway filed an answer and cross-complaint, in which they denied that they had any notice of the pendency of the suit in which the decree was rendered or of the decree until long after it was rendered, or that they authorized any one to appear for them in the suit; and Longus P. and Mary E. Tyler claimed to hold the land under a deed executed to them by A. C. Broadway.

"The plaintiff, Leverett B. Sidway, replied to the amended answer and cross-complaint in which he alleged that Lamb & Lamb were practicing attorneys, and that the decree which they were seeking to revive was entered by the consent of the attorneys in open court, and that they represented all the parties, and defendants were estopped from denying that the plaintiff had title to said lands, and denied that there was any fraud in procuring said decree, and alleged there was service had upon each and all the defendants."

Sometime in December, 1894, Sidway sold and conveyed the land mentioned in the decree to Longus P., Mary E. and William P. Tyler, and they executed to him their promissory notes for the purchase money, and thereafter, on or about the 20th day of December, 1894, executed a mortgage of the land to Sidway to secure the notes. The purchasers took possession of the land, and remained in possession for a long time. In fact, such possession has never been disturbed. They never offered to surrender it to Sidway. On the fourth day of September, 1895, Longus P. Tyler acquired the land by deed from Sallie E. Broadway and A. C. Broadway for himself and Mary E. and William P. Tyler, the Broadways making the deed to him. They claim to hold under R. H. McKay, who purchased at a tax sale.

It was to foreclose the mortgage that the suit in which the original decree was rendered was brought by Sidway.

Longus P. Tyler, Mary E. Tyler, and A. C. Broadway testified in behalf of the defendants, each one testifying that he or she had never been served with process in said suit, or had any notice of its pendency until long after the decree was rendered, and never authorized Lamb & Lamb or N. F. Lamb to represent him or her therein.

"N. F. Lamb testified that he was one of the firm of Lamb & Lamb. That he had no recollection of being employed in the original suit. That he had searched through his docket, and could find no record where he had been interested in the case, and at the time he had been very careful to keep a private docket of all cases in which he was interested. If he appeared in the suit, he must have been employed or thought he was employed by some one; that W. J. Lamb, his brother, had nothing to do with the suit."

E. F. Brown testified that in 1894 he was attorney for Leverett B. Sidway. That his best recollection was he instituted the suit to enforce a mortgage against W. P. Tyler, Longus P. Tyler and Mary E. Tyler, and made Mr. Broadway a party for the purpose of cancelling a tax deed, and, as he remembers now, when the case was called, Mr. Lamb conceded the tax title was void on account of excessive cost having been charged. He then took a decree cancelling the tax deed and a foreclosure of the mortgage. Mr. Lamb suggested that Mr. Broadway had a crop on the land, and he then held the matter up until December, 1897. His recollection was that the defendants filed an answer, and that during the pendency of the case the Supreme Court rendered a decision in which it held that the charge of eighty-five cents for making tax sale was excessive, and rendered the tax title void. Mr. Brown further stated that when he spoke of Mr. Lamb, an attorney, he had reference to N. F. Lamb, and that W. J. Lamb had nothing to do with the case."

The original decree which plaintiff seeks to revive was read as evidence.

The court upon hearing found that the allegations in the *scire facias* were true, and on the 12th day of March, 1897, the Craighead Circuit Court, in chancery, rendered the decree in controversy, after legal service of process upon the defendants therein; and revived the decree and appointed a commissioner to execute the same. The defendants appealed.

The burden was upon the appellants to prove that there was no service of process upon them. The record in this case shows that Lamb & Lamb appeared for them in the hearing, in the suit in which the original decree was rendered. They were attorneys, and the presumption is that their appearance was authorized, and this can be removed only by proof. (Weeks on Attorneys at Law (2 Ed.), § 199, and cases cited.) Appellants undertook to remove it by their own testimony as to facts which occurred more than eight years before they testified. Lamb, the attorney who appeared for them, does not remember appearing for them, but if he did he had authority to do so. E. F. Brown remembers that he, Lamb, did appear for them, and accounts for the cancellation of the tax deed and for the postponement of the delivery of the possession of the land until the first of December, 1897. His testimony is corroborated by the record. His statement of facts, corroborated by the record made at the time, shows that his memory is entitled to more credit in this case than that of the other witnesses. The chancellor's finding is sustained by the preponderance of the evidence.

In *State v. Hill,* 50 Ark. 458, it was held that equity will not interfere to relieve against a judgment obtained without service when the judgment defendant has no meritorious defense to the action in which such judgment was obtained. In this case the appellant's defense was that they purchased the land from the Broadways, who conveyed the land to them on the 4th day of September, 1895. They previously, on the 20th of December, 1894, conveyed the land by mortgage to Sidway. The statute in such cases provides: "If any person shall convey any real estate by deed purporting to convey the same in fee simple absolute or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate afterward acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantee at the time of the conveyance." Kirby's Digest, § 734. In this case the estate acquired by purchase from the Broadways vested in Sidway by virtue of the mortgage. *Kline v. Ragland,* 47 Ark. 111; *Wyman v. Johnson,* 68 Ark. 369; *Turman v. Sanford,* 69 Ark. 95. The result is they had

no valid defense to this suit, and equity will not interfere to protect them against the original decree. *State* v. *Hill, supra.*

   **Decree affirmed.**