WISE *v.* CRAIG.

4-8967                                                  226 S. W. 2d 347

Opinion delivered November 21, 1949.

Rehearing denied December 19, 1949.

*Bridges, Bridges, Young & Gregory* and *John Harris Jones*, for appellant.

*Reinberger & Eilbott,* for appellee.

Ed. F. McFaddin, Justice. This appeal necessitates construction of the will of Mrs. Jane A. Slaton, who died in 1909 survived by a son and daughter. The portions of the will germane to this case are lettered by us as paragraphs A, B, C and D for convenient reference, and read:

A. "I have heretofore deeded to my son, Marshall H. Slaton, some of my lands and for this reason, and for other reasons which I deem it unnecessary to state here, but which he will no doubt fully understand, I do not will to my said son any part of my property, and I do not wish him to be an executor of this will."

B. "Subject to the payment of my just debts and funeral expenses I will, devise and bequeath to my daughter, Sallie K. Hooker, all my property of every kind, real, personal and mixed to have and to hold said personal property absolutely and to have and to hold said real estate during her natural life. At present she has no children but if she should die leaving children or other descendants it is my will that said land shall go to her said children or other descendants share and share alike, *per stirpes,* in fee simple."

C. "If my said daughter should die leaving no issue her surviving then it is my will that said lands shall go in remainder in fee simple share and share alike to my following named nephews and nieces, namely: Mrs. Sallie Craig, Dr. Marshall McGehee (of Ga.), Frank O. McGehee, Mrs. Mattie M. Park, Mrs. Sallie Hunt, and Miss Mamie M. McGehee, the first three above named being the children of my deceased brother, Samuel M. McGehee, and the last three being the children of my deceased brother, the Rev. J. W. McGehee."

D.  "In case any of my said nephews and nieces are dead at the time of the death of my daughter, Sallie, then the descendants of such deceased devisee shall take such share as would have gone to such nephew or niece if living."

No child was ever born to Sallie K. Hooker, and in 1947 she died without issue. All of the six named nephews and nieces died prior to the death of Sallie K. Hooker; so we are concerned with the rights of those who claim as descendants of the six nephews and nieces named in paragraph C of the will.

1.  Mrs. Sallie Craig left children who are some of the appellees.

2.  Dr. Marshall McGehee left children who are some of the appellees.

3.  Frank O. McGehee left children who are some of the appellees.

4.  Mrs. Mattie M. Park left no children or issue; but her heirs at law are the appellants.

5.  Mrs. Sallie Hunt left three children, being the appellants, Sara Hunt Wise, Mary Hunt Huddleston and Martha Hunt.

6.  Miss Mamie M. McGehee left no children or issue, but her heirs at law are likewise the three appellants.[1]

After the death of Sallie K. Hooker, the real estate of Mrs. Slaton was sold by order of the court in this proceeding; and the distribution of the proceeds is the present controversy. It is conceded that appellants, as the descendants of Mrs. Sallie Hunt, are entitled to her portion of the proceeds; but appellants contend, *inter alia,* that the remainder (under paragraphs C and D of the will) vested in the six nephews and nieces immediately on the death of Mrs. Slaton, and that appellants, as the heirs at law of Mrs. Mattie Park and Miss Mamie

---

[1] The fourth appellant, G. A. Huddleston, appears in the case only as the husband of the appellant, Mary Hunt Huddleston.

McGehee, are entitled to receive the portions that would have gone to Mrs. Park and Miss McGehee. Appellees contend that the remainder (under paragraphs C and D of the will) was *contingent* and did not vest until the death of Sallie K. Hooker; and that since Mrs. Park and Miss McGehee predeceased Sallie K. Hooker and left no descendants, the interest of Mrs. Park and Miss McGehee lapsed and the proceeds of the property should be divided into four main portions, instead of six. This interpretation would give the appellants together one-fourth of the estate, whereas the appellants contend that they are entitled to one-half of the estate. The chancery court held with appellees; and this appeal challenges that holding.

In construing the will of Mrs. Slaton, we are to decide: (I) the meaning of the word "descendants" as used in paragraph D of the will; (II) whether the remainder to the nephews and nieces (as mentioned in paragraphs C and D) was a vested or contingent remainder; and (III) whether conveyances between the parties during the lifetime of Sallie K. Hooker constitute a "practical interpretation" to be followed in this case.

I. *Descendants.* Mrs. Slaton used this word several times in her will. In paragraph B she said in two instances, "children or other descendants" in referring to her daughter, Sallie K. Hooker. In paragraph C, again speaking of her daughter, Mrs. Slaton used the expression "no issue her surviving." Finally, in paragraph D, Mrs. Slaton, in speaking of nephews and nieces, said, "the descendants of such deceased devisee." With these instances in mind, it is clear that Mrs. Slaton used the word "descendants" as being *the children or the issue of the person designated.* Such is the generally accepted meaning of the word. Webster's New International Dictionary. defines a descendant as "one who descends, as offspring, however remotely." Bouvier's Law Dictionary defines descendants as: "Those who have issued from an individual, including his children, grandchildren and their children to the remotest degree."[2]

---

[2] See, also, the word "descendants" in Anderson's Law Dictionary, p. 348. See, also, "descendant" in 18 C. J. 792; and also in 26 C. J. S. 984.

We hold that the ''descendants'' of deceased nephews and nieces in paragraph D of Mrs. Slaton's will do not refer to any children of any brothers and sisters of such deceased devisee, but refer only to children or issue of such deceased devisee; and since Mrs. Park and Miss McGehee died without descendants or issue, the share of such deceased devisees cannot pass to appellants as devisees under the will, because they are not ''descendants'' of Mrs. Park or Miss McGehee.

II. *Vested or Contingent Remainder.* Appellants next claim that the estate that passed to Mrs. Park and Miss McGehee (as well as to the other four named nephews and nieces) under paragraphs C and D of the will was a vested remainder rather than a contingent remainder; and—appellants insist—that as a vested remainder the shares of Mrs. Park and Miss McGehee passed to the appellants as the heirs at law of such persons. We have many cases on contingent remainders.[3] To list all of them would require many paragraphs; to discuss all of them would be a work of supererogation. What Mr. Justice McHANEY said in *Hurst* v. *Hilderbrandt,* 178 Ark. 337, 10 S. W. 2d 491, is apropos:

''The subject of vested and contingent remainders has formed the basis of prolific decisions of courts of last resort, textwriters and annotators. We will not undertake an extensive review of the cases touching on this subject, not even those of our own courts.''

Mr. Justice McHANEY in *Hurst* v. *Hilderbrandt, supra,* then quoted with approval from 23 R. C. L. 500:

'' 'The broad distinction between vested and contingent remainders is this: In the first, there is some person *in esse* known and ascertained, who, by the will or deed creating the estate, is to take and enjoy the estate, and whose right to such remainder no contingency can

---

[3] For a few, see: *Eversmeyer* v. *McCollum,* 171 Ark. 117, 283 S. W. 379; *Walker* v. *Wilmans,* 176 Ark. 251, 3 S. W. 2d 303; *Hurst* v. *Hildebrandt,* 178 Ark. 337, 10 S. W. 2d 491; *National Bank* v. *Ritter,* 181 Ark. 439, 26 S. W. 2d 113; *Deener* v. *Watkins,* 191 Ark. 776, 87 S. W. 2d 994; *Adams* v. *Eagle,* 194 Ark. 171, 106 S. W. 2d 192; *Prall* v. *Prall,* 204 Ark. 1074, 166 S. W. 2d 1028; *Liberty Central Trust Co.* v. *Vaughan,* 167 Ark. 219, 267 S. W. 361.

defeat. In the second, it depends upon the happening of a contingent event, whether the estate limited as a remainder shall ever take effect at all. The event may either never happen, or it may not happen until after the particular estate upon which it depended shall have been determined, so that the estate in remainder will never take effect.' '' [4]

Measured by the said test, quoted and approved by this court, it is clear that the remainder to the nephews and nieces under paragraphs C and D was a contingent remainder. In fact, it was an alternative contingent remainder, as stated in 33 Am. Juris. 611:

"Alternative remainders limited upon a single precedent estate are always contingent. Such remainders are created by a limitation to one for life, with remainder in fee to his children, issue, or heirs, and, in default of such children, issue, or heirs, to another or others. . . ."

In *Greer* v. *Parker*, 209 Ark. 553, 191 S. W. 2d 584, we quoted the classic statement from *Doe* v. *Considine*, 6 Wall. (U. S.) 458, 18 L. Ed. 869, as follows:

" 'A devises to B for life, remainder to his children, but, if he dies without leaving children, remainder over, both the remainders are contingent; but, if B afterwards marries and has a child, the remainder becomes vested in that child, subject to open and let in unborn children, and the remainders over are gone forever.' ''

Measured also by the test of the foregoing statement, the remainder to the nephews and nieces (under paragraphs C and D of the will) was clearly a contingent remainder, because the said nephews and nieces were all in the "remainder over" class (since Mrs. Slaton devised her property to Sallie K. Hooker for life, remainder to her issue in fee simple; but if she died without issue, then the remainder over was to go to the named nephews and nieces). Sallie K. Hooker never had any children, so the remainder did not "vest in such child subject to open." The remainder to the named nephews and nieces re-

---

[4] This language from Ruling Case Law is also found verbatim in 33 Am. Juris. 551.

mained contingent during the lifetime of Sallie K. Hooker,[5] and vested only on her death. The named nephews and nieces had only a contingent remainder, which, on the death of Sallie K. Hooker in 1947, went to those then alive or to the "descendants" of such of them who had died leaving descendants. In 33 Am. Juris. 618 the rule is stated:

"Where the interest of a remainderman is contingent on his surviving the life tenant, and he dies during the continuance of the life estate, he takes no interest in the land under the remainder and no interest therein devolves upon his heirs."

Therefore, we hold that the appellants, as the heirs at law of their two aunts, Mrs. Park and Miss McGehee, cannot claim any interest in the estate of Mrs. Slaton by virtue of being such heirs at law, since the said two aunts died "without descendants," and the contingent remainder was never vested in the lifetime of the said two aunts of appellants. The will of Mrs. Slaton (giving full effect to its provisions) therefore meant, that if Sallie K. Hooker never had children and died without descendants, then upon her death the remainder would vest in the nephews and nieces named in paragraph C of the will in as many shares as there were such named nephews and nieces alive or "descendants" *per stirpes* of those who had died. Since two of the named nieces died without descendants, the estate was necessarily divided into four major shares.

III. *Practical Interpretation.* Finally, appellants offered proof that during the lifetime of Sallie K. Hooker the nephews and nieces named in paragraph C of Mrs. Slaton's will joined with Sallie K. Hooker in making transfers of *some other property* of the estate of Mrs. Slaton; and appellants insist that those transfers constitute specific recognition that the remainder to such nephews and nieces was vested rather than contingent. Appellants place considerable emphasis on this argument,

[5] In a footnote to *Love* v. *McDonald*, 201 Ark. 882, 148 S. W. 2d 170, Arkansas cases are cited to sustain the statement: ". . . the presumption being that there may be issue so long as life continues."

citing us to the topic entitled "Practical Construction by Parties" found in 57 Am. Juris. 725 and the annotation entitled "Practical Construction Placed on Will by Parties Interested" found in 67 A. L. R. 1272.

There are several reasons why appellants' argument concerning "practical interpretation" has no significance in this case: "First, what Sallie K. Hooker and the named nephews and nieces did might tend to show *their understanding* of the testator's intention, but our task is to ascertain from the four corners of the will the *intention of the testator*. What others thought that intention to be might be erroneous. Of course, if estoppel were the issue, then what the parties did would be highly important. But the intention of the testator is to be ascertained from the will itself, and not from what others understood the will to be.

Secondly: Even the authority cited by appellants (i. e., 57 Am. Juris. 725) says:

". . . this principle of practical construction is applicable only where the will involved is actually ambiguous. . . ."

As we stated in topic II, *supra,* the will of Mrs. Slaton *clearly* created a contingent remainder in the named nephews and nieces. We have no necessity to resort to any "practical construction" doctrine to ascertain that intention; and we certainly could not accept any "practical construction" doctrine contrary to the clear intention of the testator.

Finally: What Sallie K. Hooker and the contingent remaindermen did regarding other property merely shows an effort by contingent remaindermen to convey their interest in property,[6] and the effectiveness of that effort is not the point for decision in this case. At most, such effort cannot be used to defeat Mrs. Slaton's clear intention of creating a contingent remainder in the named nephews and nieces in the property concerned in this suit.

---

[6] See Vol. II, p. 87, Ark. Law Review for a discussion in "Alienability of Contingent Remainders."

We therefore reach the conclusion that the decree of the chancery court on the order of distribution is in all things correct. Affirmed.