McLAREN v. CROSS.

5-2976                                    370 S. W. 2d 59

Opinion delivered May 20, 1963.

[Rehearing denied September 9, 1963.]

*Gregory & Claycomb,* for appellant.

*Bob Bailey, Jr., J. Marvin Holman, Robert E. Irwin,* for appellee.

PAUL WARD, Associate Justice. This litigation calls for an interpretation of a will executed by one G. A. McLaren who died on August 7, 1952. The will was admitted to probate on August 27, 1952.

The appellee, Zada Cross, (a beneficiary under the will) filed a petition on May 23, 1953 in the probate court to have the will construed in order to determine (a) when she would receive a bequest of $5,000 and (b) when she would enter into a life estate of eighty acres of land. The probate court ruled it lacked jurisdiction to decide either issue (a) or (b). Upon appeal to this Court we held the probate court did have jurisdiction to adjudicate her claim to the $5,000 but not to her claim relating to the real estate. See *Cross* v. *McLaren,* 223 Ark. 674, 267 S. W. 2d 956, where many of the facts related to the issues in the present appeal are set forth, and which facts will not be repeated here.

Upon remand by this Court issue (a) was presented to the probate court and issue (b) was presented to the chancery court, and in both instances the issues were resolved in favor of appellee. By agreement of the parties, the two cases are consolidated on appeal for briefing and submission. The parties apparently now agree, and we find, that the issue is the same in both cases, and that the decision in one case controls the decision in the other case.

*The Issue.* The will in question consists of twenty-five separate items, and it is modified by three separate codicils. It is necessary first to point out (in general terms) that the will designates two persons as executrices, that it conveys the bulk of the property to them as trustees, and that the trustee-ship terminates on the more remote of two designated dates: one, thirty years after the death of the testator; the other, upon the death of his widow and daughter. It is not questioned by appellants that the will gives appellee $5,000 and also a life interest in the east half of the southeast quarter of Section 32, Township 7 North, Range 18 West, 80 acres.

650

The only issue to be decided on this appeal is whether appellee (Zada Cross) gets the above mentioned properties at the death of the testator (as the trial courts held) or whether she gets them at the termination of the trusteeship (as appellants contend).

The portions of the will bearing primarily on the issue mentioned are Item 24 and two codicils which modify said item. The first codicil deletes certain words from Item 24 while the second codicil adds certain words. To simplify and facilitate consideration of Item 24 as modified it will be copied below with the deleted words in capital letters and with the added words in italics.

"After the full expiration of twenty years from my death and the death of both my wife Florence and my daughter, Alta, either before or after the full twenty year period and whichever is latest to occur, then I declare the trust herein created to terminate and my Trustees shall thereupon execute their trustees deed to my granddaughter, Sandra Lee McLaren, and to the issue of her body, but if the said Sandra Lee McLaren, be dead, then said conveyances shall be made to her bodily heirs and if there be no bodily heirs of the said Sandra Lee McLaren living at the termination of this Trust as herein provided, then all property held by my said Trustees shall revert to my estate IN THE EVENT OF SUCH REVERSION BY REASON OF THE DEATH OF SANDRA LEE McLAREN AND FAILURE OF BODILY ISSUE OF HER, THEN IT IS MY WILL, AND I GIVE AND BEQUEATH TO MY COUSIN, ARNIE McLAREN, THE SUM OF FIVE THOUSAND AND NO/100 ($5,000) DOLLARS; TO MY COUSIN TABITHA McLAREN FRONABARGER, OR IN THE CASE OF HER DEATH TO HER DESCENDANTS, ACCORDING TO THE LAWS OF DESCENT AND DISTRIBUTION OF THIS STATE, FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS, to Zada Cross I give bequeath and devise Five Thousand and no/100 ($5,000.00) Dollars, in money, absolutely, and the East Half (E ½) of the Southeast Quarter (SE ¼), of Section 32, Township 7 North, Range 18 West, in Pope

County, Arkansas, for and during her life and under the same terms and conditions as her present lease. *Provided, said Zada Cross complies with the terms and conditions in her lease; then neither my trustees or beneficiaries of my will, may dispossess her of the lands under her lease or disturb her in the peaceable possession of the lands so leased or willed to her.*" (The twenty year period mentioned above was changed by a codicil to a thirty year period.)

The general rule in a case of this type, acknowledged by both parties, is that the intent of. the testator, as gathered from the entire will, is controlling. If, however, the intent cannot be determined with certainty from the language in the will, recourse must be had to judicial interpretation and construction. In the case of *Park* v. *Holloman,* 2,10 Ark. 288, 292, 195 S. W. 2d 546, 548, we find this rule forcefully stated in the following words:

"The polestar of the court, in construing a will, should always be the intention of the testator; and the will itself is ordinarily the only place to which the court should resort to find such intention. If it be in the will expressed in language that is clear and unmistakable the court should go no further, but should put in effect the intention of the testator, as thus clearly set forth in his will."

In *Prall* v. *Prall,* 204 Ark. 1074, 1077, 166 S. W. 2d 1028, the court, quoting from *Kelly* v. *Kelly,* 176 Ark. 548, 3 S. W. 2d 305, said:

" 'The cardinal rule in construing a will is to ascertain and declare the intention of the testator. That intention is to be gained from reading the entire will and construing it so as to give effect to every clause and provision. therein if this can be done.' "

In *Quattlebaum* v. *Simmons National Bank, Admr.,* 208. Ark. 66, 68, 184 S. W. 2d 911, the Court said:

"On the question of interpretation and construction of a will, the general rule, running through a long line of our cases, is that it is only where there is some ambiguity

or doubt as to the meaning of the language used in the will that recourse to judicial interpretation or construction is justified."

It is also well established that ordinarily, the law favors the early vesting of titles. See *Hurst* v. *Hilderbrandt,* 178 Ark. 337, 10 S. W. 2d 491, and *Wallace* v. *Wallace,* 179 Ark. 30, 13 S. W. 2d 810. Also, if there is any inconsistency between any portion of a will and the codicil, the latter will control. In the case of *United States of America* v. *Moore,* 197 Ark. 664, 124 S. W. 2d 807, the court quoted with approval the following language:

" ' " . . . the mere taking of a codicil gives rise to the inference of a change in intention, and such an inference does not arise in the case of a will standing by itself. When a will and codicil are inconsistent in their provisions, the codicil, being the latest expression of the testator's desires, is to be given precedence." ' "

After carefully studying the language in Item 24 of the will and the effect thereon of the language taken from the two codicils, and applying the rules of construction above mentioned, we have concluded it was the intention of the testator that appellee should come into use and possession of the subject properties immediately following the probation of his will, and that, consequently, the judgment and decree of the trial courts must be affirmed. It must be admitted that this result is not readily deducible from the language used in the original Item 24. In fact the language in that item strongly indicates the testator intended for appellee to wait (to enjoy said properties) until the trust terminated. On the other hand it is difficult to understand why the testator would have deleted the indicated words (by the first codicil) if he did not intend to change the date for the vesting of the property. It must be conceded the testator intended the properties to vest on one of the two designated dates since no other date is mentioned.

A careful study of the language used in the second codicil (shown as emphasized in Item 24 above) also tends strongly to support the conclusion already an-

nounced. This language clearly implies the testator considered the trustees were to have some control over appellee as to how she managed the property "willed to her." This intended control by the trustees, however, is absolutely inconsistent with an intent for the life estate to vest after the trustees had been discharged—that is, after the trust terminated. As pointed out by appellee, if the life estate was not to vest until the trust terminated, it is highly probable that appellee (who is now advanced in years) would have an expectancy of less than two years left in which to enjoy it. It hardly seems reasonable to believe the testator intended to create a situation of this type.

Appellants ably and forcefully argue that an interpretation of the testator's will which allows the gifts to become effective upon his death, violates other portions of the will. In support of this argument they point out that under Items 4 and 7 of the original will the testator "had already made a clear gift in trust of the same properties claimed by appellee under Item XXIV of the will." For reasons presently set forth we do not feel compelled to agree with appellants' interpretation of the meaning of the language in the two mentioned items.

The testator, after directing the payment of his debts and after making certain gifts to his wife, provided in Item 4 that "all the rest and residue" of his estate should go to his trustees "to hold . . . for the term, conditions and purposes hereinafter mentioned and set out . . . " By the use of the above language we think it is possible that the testator meant one of the "conditions" was that appellee should have the two gifts. Item 7 of the will provides that the trustees should hold, for the life of the trust, certain lands which are described. Among these lands is the land in which appellee gets a life estate. Appellants' argument is that one fact contradicts the other; that is, the trustees could not "hold" a parcel of land while appellee had a life estate in the same land. We think, however, that the testator could have intended only that the trustees should not dispose of the *fee simple title* to the land. Support for this intent is found by

reference to Item 21 of the will. There we find this language: "I declare it is not my intention that *fee simple* to any lands . . . shall vest in any beneficiary . . . " (Emphasis added.)

It is our conclusion, therefore, based upon what we have heretofore said, that the judgment and decree of the trial courts should be, and the same are hereby, affirmed.

McFADDIN, J., dissents.